# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, WALKER, and PARKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class RUEBEN K. YOUNG**
**United States Army, Appellant**

ARMY 20230128

Headquarters, U.S. Army Garrison Fort Meade
Adam S. Kazin, Military Judge
Lieutenant Colonel Christopher A. Callicott, Staff Judge Advocate

For Appellant: Lieutenant Colonel Autumn R. Porter, JA; Major Robert W. Rodriguez, JA; Captain Justin L. Watkins, JA (on brief).

For Appellee: Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Chase C. Cleveland, JA; Lieutenant Colonel Anthony O. Pottinger, JA (on brief).

13 September 2024

--------------------------------
SUMMARY DISPOSITION
--------------------------------

POND, Chief Judge:

On appeal, appellant challenges the factual sufficiency of his conviction of failing to go to his appointed place of duty in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886 (2019) [UCMJ]. We agree the offense is factually insufficient and provide relief in our decretal paragraph.[1]

## BACKGROUND

An enlisted panel sitting as a special court-martial convicted appellant, contrary to his pleas, of one specification of failure to report to his appointed place

---

[1] We have given full and fair consideration to the additional error personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine it warrants neither discussion nor relief.

of duty and one specification of being disrespectful in language toward a noncommissioned officer in violation of Articles 86 and 91, UCMJ, 10 U.S.C. §§ 886, 891 (2019).[2] The military judge sentenced appellant to be reduced two ranks to the grade of E-5.[3]

Appellant was charged with failing to go to Sexual Harassment/Assault Response and Prevention (SHARP) training at 0900 in Building 316 on 27 September 2022 at or near Fort Meade, Maryland. Appellant's company commander scheduled the training the afternoon of the day prior, on 26 September 2022, to meet end of fiscal year training requirements. The company first sergeant, 1SG ▮, notified those required to attend the next day's training by email at 1500 on 26 September 2022. The list included twenty-five individuals, who were mostly civilians, and eight servicemembers, including appellant. Appellant, who had scheduled court hearings and childcare issues that week, was authorized to work from home and did not see the email on 26 September 2022.[4] But appellant testified he spoke to 1SG ▮ earlier that morning to inform him of his court dates, including a hearing on 27 September 2022 (the day of the scheduled SHARP training) and his

---

[2] The panel acquitted appellant of assaulting a superior noncommissioned officer and false official statement in violation of Articles 91 and 107, UCMJ.

[3] Because appellant's sentence did not subject his case to automatic review before this court, Appellant exercised his election to appeal his conviction and sentence to this court under the recent amendment to Article 66, UCMJ. *See* National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 544, 136 Stat. 2395, 2583-84 (2022) (stating jurisdictional amendments to Article 66 apply to cases submitted to this court on or after 23 December 2022).

[4] At the time of the scheduled SHARP training, appellant had physical custody of his 17-month-old son. Appellant testified he filed an emergency protection order against his ex-wife with civilian authorities after she abducted his son on 20 September 2022 and reported the events to his leadership. Appellant further testified that he appeared at a related civilian court hearing on 21 September 2022. That same day, appellant's command convened a board at 0900 to make findings and recommendations on whether to administratively separate appellant from the Army. The board continued until the next day to allow appellant to appear at his civilian court proceedings. Appellant's company commander appeared before the board and recommended appellant's separation. Appellant testified, unrebutted, that the board determined the incidents forming the basis for initiating the administrative separation were unfounded, except for one failure to report to duty. On 22 September 2022, the board concluded and recommended appellant's retention.

lack of childcare for his 17-month-old son. 1SG ▮ testified he was not aware of all of appellant's court dates but he was aware of appellant's child care issues.

After 1SG ▮ sent the email at 1500, he did not call appellant nor take any other action to notify appellant of the training. Another E-7 from appellant's section, SFC ▮, who was not his supervisor, called appellant later that evening to inform him of the training. SFC ▮ testified he was filling in for appellant's supervisor, MSG ▮, who was on leave. SFC ▮ testified he first left a message stating he was calling "in regards to training" but did not specify exactly what the training was. The accused called him back. SFC ▮ testified, during the phone call, he informed appellant of the SHARP training, of the email from 1SG ▮, and that 1SG ▮ had asked SFC ▮ to reach out to appellant to ensure he did not have any conflicts. In contrast, 1SG ▮ testified SFC ▮ took it upon himself to notify appellant. SFC ▮ testified appellant indicated he did not believe he had any conflicts and would attend the SHARP training. In contrast, appellant testified he did not indicate either way whether he would be at the training. Appellant testified he acknowledged the information about the SHARP training but because SFC ▮ was a peer and because he had already informed the 1SG about his scheduled court dates and lack of childcare earlier that morning, he believed the call was just for his information and did not relay an order.[5] Appellant further testified that any requirements or duties were given to him by MSG ▮ or 1SG ▮. SFC ▮ testified he was responsible for reporting appellant's training requirements while MSG ▮ was on leave but also testified appellant had not reported his daily accountability to SFC ▮ in MSG ▮'s absence. SFC ▮ was also unaware of appellant's childcare issues and his court dates.

The following morning, appellant did not go to the 0900 SHARP training in Building 316 but went to the local Baltimore courthouse with his 17-month-old son to obtain a temporary restraining order. After waiting for a few hours and after speaking with an attorney, appellant decided to forego seeking a temporary restraining order and left the courthouse at 1300, well after the SHARP training was over. No one from the command contacted appellant to ask about his whereabouts the morning of 27 September 2022 even though he was considered high risk. Appellant later called 1SG ▮ that evening to provide him an update. During the phone call, 1SG ▮ told appellant he was required to attend SHARP training the following day, 28 September 2022, at 0900. The next morning, appellant attended training with his son in tow after being unable to find childcare. While there, SFC ▮, at the direction of the 1SG who was also present, attempted to counsel appellant for failing to come to SHARP training the day prior. Appellant, however, refused to

---

[5] We note that SFC ▮'s testimony contained a number of additional facts which were directly contradicted by other fact witnesses, specifically 1SF ▮.

be counseled by a peer and while his son was present. The ensuing heated discussion between appellant and the 1SG served as the basis for appellant's conviction for disrespect towards 1SG ██, a superior noncommissioned officer, in violation of Article 91, UCMJ.

The 1SG testified that no one had excused appellant from the training on 27 September 2022. The company commander testified that had appellant informed the command of his childcare issues, he would have told appellant to come to the next training on 28 September 2022.

## LAW AND DISCUSSION

In a factual sufficiency review under the recently amended Article 66, this court "may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof." Article 66(d)(1)(B), UCMJ.[6] Once the showing is made, this court "may weigh the evidence and determine controverted questions of fact subject to — (1) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and (2) appropriate deference to findings of fact entered into the record by the military judge." *Id.* As a result, if "the [c]ourt is clearly convinced that the finding of guilty was against the weight of the evidence, the [c]ourt may dismiss, set aside, or modify the finding, or affirm a lesser finding." *Id.* Our superior court concluded "appropriate deference" in the amended statute implies "that the degree of deference will depend on the nature of the evidence at issue," such that a Court of Criminal Appeal (CCA) might give high deference when assessing fact witness testimony and low deference when assessing documents, videos, or other objective evidence. *United States v. Harvey*, ___M.J.___ (C.A.A.F. 6 Sep. 2024). "The statute affords the CCA discretion to determine what level of deference is appropriate, and [CAAF] will review a CCA's decision only for an abuse of discretion." *Id.*

The elements of the offense of failure to report in violation of Article 86, UCMJ, are:

(1) That a certain authority appointed a certain time and place of duty for the accused;

(2) That the accused knew of that time and place; and

---

[6] The amendment to Article 66(d)(1)(B) applies only to courts-martial, like the one here, where every finding of guilty in the Entry of Judgment is for an offense that occurred on or after 1 January 2021. National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 542(b), 134 Stat. 3612 (2021).

(3) That the accused, without authority, failed to go to the appointed place of duty at the time prescribed.

*Manual for Courts-Martial, United States* (2019 ed.) [MCM, 2019], pt. IV, ¶ 10.b.(1).

The second element of the offense required appellant to know of a particular duty, in this case, "SHARP training at 0900 [on 27 Sep 2022] in [b]uilding 316." (Charge Sheet). The Court of Appeals for the Armed Forces [CAAF] previously held that "knowledge may be inferred from evidence of deliberate avoidance" where an accused is "subjectively aware of a high probability" that he was required to be present at a certain place of duty at a time prescribed, "and purposely contrived to avoid learning" of the duty. *United States v. Adams*, 63 M.J. 223, 225-26 (C.A.A.F. 2006) (holding "deliberate avoidance can create the same criminal liability as actual knowledge for all Article 86, UCMJ, offenses"). In *Adams*, the CAAF affirmed appellant's conviction for failure to go to his place of duty when instead of going to 0630 formation, Adams stayed in his barracks room leaving only to go to the dining hall and rather than trying to find anyone from his platoon or squad, deliberately avoided finding out where he was supposed to be. *Id.*

We find that appellant has made a specific showing of a deficiency of proof. Giving appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence, we are clearly convinced appellant's guilt is against the weight of the evidence. Unlike in *Adams*, where the appellant deliberately avoided finding out where he was supposed to be, the appellant here actively and regularly sought out his chain of command to keep the command updated on his whereabouts and status. It was appellant who contacted 1SG ▉ the day before the scheduled SHARP training to let him know of his court date the next day and his lack of childcare. It was appellant who called 1SG ▉ the next day to provide an update following his day at court. Giving high deference to the fact the trial court heard and saw SFC ▉ testify, we note that key facts given by SFC ▉ – such as whether 1SG ▉ called SFC ▉ to notify appellant of the training – were directly contracted by other fact witnesses, specifically 1SG ▉. Given the circumstances of appellant's relationship with SFC ▉, or lack thereof, the weight of the evidence does not show beyond a reasonable doubt that SFC ▉ conveyed a duty *for appellant* to be at SHARP training on 27 September 2022. Similarly, the weight of the evidence does not show beyond a reasonable doubt that following that conversation, appellant was subjectively aware of a high probability that he was required to be present at the 0900 SHARP training on 27 September 2022. Appellant had just spoken with 1SG ▉ earlier that morning informing the command of his court date on 27 September 2022 and his lack of childcare that week, which as the company commander testified, would have excused appellant from the training.

As we have weighed the evidence, we are clearly convinced the evidence does not prove beyond a reasonable doubt that appellant knew of his duty to be at SHARP

training on 27 September 2022 or that he deliberately avoided learning of this duty. Consequently, we find appellant's finding of guilt is factually insufficient.

## CONCLUSION

The finding of guilty for Charge I and its Specification is SET ASIDE and DISMISSED. The finding of guilty for Charge II and its Specification is AFFIRMED. Having considered the entire record, we conclude we are able to reassess the sentence and do so using the principles articulated by our superior court in *United States v. Sales*, 22 M.J. 305, 307-09 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). Reassessing the sentence, a sentence of no punishment is AFFRIMED.

Senior Judge WALKER and Judge PARKER concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court